# Exhibit G



# United States Department of the Interior
### OFFICE OF THE SOLICITOR
Washington, D.C.  20240

May 1, 2025

M-37086

Memorandum

To:            Secretary

From:         Acting Solicitor

Subject:     Withdrawal of Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, *Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)*, Alternate Energy-related Uses on the Outer Continental Shelf

On December 14, 2020, former Solicitor Daniel H. Jorjani issued M-Opinion 37059,[1] addressing how the Department is to interpret and apply subsection 8(p)(4) of the Outer Continental Shelf Lands Act ("OCSLA").[2] That subsection is part of subparagraph (p), which grants the Secretary authority to grant a lease, easement, or right-of-way on the Outer Continental Shelf for activities not otherwise authorized in OCSLA and other applicable law.[3] Subsection 8(p)(4), in relevant part, states:

> "(4) **Requirements.** The Secretary [of the Interior] shall ensure that any activity under this subsection is carried out in a manner that provides for— . . . (I) prevention of interference with reasonable uses (as determined by the Secretary) of the exclusive economic zone, the high seas, and the territorial seas[.]"[4]

Paragraph (4) of that subsection directs the Secretary to ensure that any activity undertaken pursuant to subsection (p) must be taken in accordance with the requirements established in that paragraph.[5]

---

[1] M-Opinion 37059 was formally entitled, *Secretary's Duty to Prevent Interference with Reasonable Uses of the Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p)*, Alternate Energy-related Uses on the Outer Continental Shelf. This M-Opinion will refer to that document by the far-less verbose "M-Opinion 37059" or the "Jorjani Opinion".

[2] 43 U.S.C. § 1337(p)(4).

[3] *Id.* § 1337(p)(1).

[4] *Id.* § 1337(p)(4).

[5] *Id.*

In M-Opinion 37059, Solicitor Jorjani concluded that the proper scope of the phrase "prevention of interference with reasonable uses" is such that, when evaluating whether a proposed activity would conflict with an existing use, the Secretary is required "to act to prevent interference with reasonable uses in a way that errs on the side of less interference rather than more interference."[6]

On April 9, 2021, Principal Deputy Solicitor Robert Anderson revisited M-Opinion 37059 in an M-Opinion entitled, *Secretary's Duties under Subsection 8(p)(4) of the Outer Continental Shelf Lands Act When Authorizing Activities on the Outer Continental Shelf*, M-37067 ("Anderson Opinion" or "M-Opinion 37067"). The Anderson Opinion withdrew the Jorjani Opinion, reasoning that:

> M-Opinion 37059 did not read OCSLA subsection 8(p)(4) as a whole, but instead applied tools of statutory construction to "interpret" the phrase "prevention of interference with reasonable uses" in subsection 8(p)(4)(I). Because the Opinion did not acknowledge the subsection's remaining text—requiring the Secretary to act "in a manner providing for" several goals—the Opinion failed to situate subsection 8(p)(4) within a familiar category of statutes imposing only general obligations on federal agencies.

The Anderson Opinion then concluded that the Jorjani Opinion's analysis was superfluous and stated: "because subsection 8(p)(4) commands only that the Secretary rationally balance the subsection's various goals, the subsection may not be read to impose additional requirements in its individual paragraphs, such as the requirement that the Secretary 'prevent[] all interference, if the proposed activity would lead to unreasonable interference.'"[7]

The Jorjani Opinion and the Anderson Opinion thus both wrestle with the question of how best to interpret the statutory language of OCSLA's subsection 8(p)(4) "requirements" paragraph. Questions of statutory interpretation are notoriously fraught exercises subject to no small amount of conflicting methods and precedent. However, since the time of the Anderson Opinion, the U.S. Supreme Court has added a guiding light to direct federal agencies as to how best to approach this dilemma.

In *Loper Bright Enterprises v. Raimondo, Secretary of Commerce*, the Supreme Court addressed the question of whether federal courts should defer to "'permissible' agency interpretations of the statutes those agencies administer . . ."[8] The Court concluded that when reviewing agency action under the Administrative Procedure Act ("APA") it is the duty of federal courts to exercise their own best judgment to independently interpret a statute and effectuate the will of Congress, subject to constitutionally imposed limitations.[9] The clear implication of the Court's holding is

---

[6] M-Opinion 37059 at 15.
[7] M-Opinion 37067 at 4-5 (internal footnotes and citations omitted).
[8] 603 U.S. 369, 378 (2024).
[9] *Id.* at 395 ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.").

that a "permissible" agency interpretation of a statute will not suffice to shield the agency from reproach if its reading is not the best, most faithful reading of the statute in question.[10]

A recent decision in the First Circuit Court of Appeals, *Seafreeze Shoreside v. United States Department of the Interior*,[11] offers a useful interpretation of the (p)(4) criteria. That court upheld the District Court's conclusion that "the OCSLA criteria are 'mandatory,'" and "BOEM must ensure that 'each criterion is met' in a manner that is 'not to the detriment of the other criteria.'"[12] The Anderson Opinion's assertion that "subsection 8(p)(4) commands only that the Secretary rationally balance the subsection's various goals" both diminishes the importance of each subparagraph (contrast "mandatory" with "goals"), while also opening the door to the possibility that any one criteria may be favored over another. This no longer reflects the best, or even a permissible, agency interpretation. It must therefore be withdrawn.

The same defect does not exist with respect to the Jorjani M-Opinion 37059. The Jorjani Opinion is focused on interpreting and providing advice on the scope of the subsection (p)(4)(I) requirement. Its guidance counsels a Secretary to err on the side of ensuring less interference with reasonable uses while neither minimizing nor aggrandizing the relative importance of that particular criteria.

Because M-Opinion 37067 conflicts with the best reading of OCSLA, M-Opinion 37067 is hereby withdrawn. Furthermore, M-Opinion 37059 is hereby reinstated and all relevant Department bureaus and offices are instructed to treat M-Opinion 37059 as binding and authoritative. In addition, the regulatory provision at 30 C.F.R. § 585.102, and any other Departmental action taken in reliance on the now withdrawn M-Opinion 37067, should be re-evaluated in light of this Memorandum.

Gregory Zerzan

---

[10] *Id.* at 373 ("In the business of statutory interpretation, if it is not the best, it is not permissible.").
[11] 123 F.4th 1, 25-27 (1st Cir. 2024).
[12] *Id.* at 25.