**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |
|---|---|
| RENEW NORTHEAST, *et al.*,<br><br>     Plaintiffs,<br><br> v.<br><br>UNITED STATES DEPARTMENT<br>OF THE INTERIOR; *et al.*,<br><br>     Defendants. | Civil Action No. 1:25-cv-13961 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

LEGAL STANDARDS ........................................................................................................... 4

ARGUMENT........................................................................................................................... 5

      I.     Plaintiffs' Allegations Fail to Establish Article III Standing.................................. 5

      II.    Plaintiffs Fail to State a Claim for Relief under the APA....................................... 9

      III.   Plaintiffs' Claims Are Not Ripe for Judicial Review ........................................... 13

CONCLUSION...................................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Mun. Power, Inc. v. FERC*,
86 F.4th 922 (D.C. Cir. 2023) ............................................................................................. 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 5

*AstraZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 116 (3d Cir. 2025) .............................................................................................. 7

*Bennett v. Spear*,
520 U.S. 154 (1997) .......................................................................................................... 10

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*,
557 F. Supp. 3d 224 (D. Mass. 2021) ................................................................................ 6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................................... 5, 6, 8

*Connecticut v. U.S. Dep't of the Interior*,
363 F. Supp. 3d 45 (D.D.C. 2019) .................................................................................... 12

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006) ............................................................................................................ 5

*Democratic Nat'l Comm. v. Trump*,
No. CV 25-00587 (AHA), 2025 WL 1573181 (D.D.C. June 3, 2025) ............................... 7

*Harper v. Werfel*,
118 F.4th 100 (1st Cir. 2024) ........................................................................................... 10

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016) ........................................................................................... 5, 6

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .............................................................................................. 10, 11, 13

*Mayor of Ocean City v. U.S. Dep't of the Interior*,
No. SAG-24-03111, 2025 WL 3628137 (D. Md. Dec. 15, 2025) ............................ 13, 14, 15

*Nat'l Treasury Emps. Union v. Vought*,
149 F.4th 762 (D.C. Cir. 2025) ........................................................................................ 14

*Nat'l Urb. League v. Trump*,
783 F. Supp. 3d 61 (D.D.C. 2025) ...................................................................................... 6

*New England Power Generators Ass'n, Inc. v. FERC*,
707 F.3d 364 (D.C. Cir. 2013) ........................................................................................... 7

*New York v. Trump*,
No. 25-CV-11221-PBS, 2025 WL 3514301 ................................................................ 12

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .................................................................................................. 11

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989) .................................................................................................. 2

*Taal v. Trump*,
No. 3:25-CV-335 (ECC/ML), 2025 WL 926207 (N.D.N.Y. Mar. 27, 2025) ............. 7

*Teva Pharms. USA, Inc. v. Kennedy*,
No. CV 25-113 (SLS), 2025 WL 3240267 (D.D.C. Nov. 20, 2025) ................... 7, 13

*Texas v. United States*,
523 U.S. 296 (1998) ................................................................................. 13, 14, 15

*Thomas v. Union Carbide Agric. Prods. Co.,*
473 U.S. 568 (1985) ................................................................................................ 13

*Toilet Goods Ass'n, Inc. v. Gardner*,
387 U.S. 158 (1967) ................................................................................................ 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................................................................. 8

*Trump v. New York*,
592 U.S. 125 (2020) .................................................................................................. 6

*Verlus v. Experian Info. Sols., Inc.*,
No. 23-CV-11426-DJC, 2025 WL 836588 (D. Mass. Mar. 17, 2025) ..................... 5

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) ................................................................................................ 12

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .................................................................................................. 6

**Statutes**

42 U.S.C. § 4321 ............................................................................................................ 2

5 U.S.C. § 551 ................................................................................................................ 1

5 U.S.C. § 551(13) ....................................................................................................... 10

5 U.S.C. § 704 .............................................................................................................. 10

5 U.S.C. § 706(1) ......................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b) ...................................................................................................... 4

**INTRODUCTION**

This case is a challenge to six agency guidance documents or statements on websites that, in Plaintiffs' view, are frustrating the development of wind and solar energy projects. But Plaintiffs' claims are not reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, because Plaintiffs have not challenged any final agency actions. Plaintiffs do not identify any agency decision regarding a specific application, let alone one in which the subject documents or website statements have been applied to the detriment of Plaintiffs or one of their members. Instead, Plaintiffs seek to use this case as an effort to restructure the wind and solar energy permitting regime across multiple bureaus within the Department of the Interior as well as the U.S. Army Corps of Engineers. But this type of anticipatory challenge to agency decisions that have not yet become final is not permitted under the APA. And because Plaintiffs' Amended Complaint relies on a generalized and speculative theory of delay untethered to a final agency action, Plaintiffs have not established the injury, causation, and redressability necessary to support standing under Article III, nor have they shown that their claims are ripe for judicial review. Because Plaintiffs cannot establish or maintain subject matter jurisdiction for their claims and do not state a claim for relief cognizable under the APA, their case must be dismissed.

**BACKGROUND**

On January 12, 2026, Plaintiffs filed an Amended Complaint ("Am. Compl."), Dkt. 33, as well as a Motion for Preliminary Injunction, Dkt. 35. The Court held a hearing on Plaintiffs' motion on March 4, 2026, and the motion remains under advisement.

The relevant background for the instant motion focuses on Plaintiffs' alleged "agency actions" that they contend unlawfully prevent advancement of wind and solar energy projects.

Am. Compl. ¶ 4; *see also id.* at 77, Prayer for Relief (requesting that the Court "vacate and set aside" each of the alleged actions).

First, Plaintiffs identify the July 15, 2025, Interior Deputy Chief of Staff – Policy memorandum titled "Departmental Review Procedures for Decisions, Actions, Consultations, and Other Undertakings Related to Wind and Solar Energy Facilities," Ex. 1 hereto ("Policy Memo"). This memorandum states that actions related to wind and solar energy "shall require submission" to the Interior Office of the Executive Secretariat and Regulatory Affairs and be subsequently "review[ed]" by the Deputy Secretary and Secretary. *Id.* at 1. The memorandum does not prohibit or prescribe any action relating to any wind or solar energy project. Rather, it relates to internal agency procedure and simply requires submission for review to the agency officials tasked with carrying out Interior's statutory authorities and duties.

Second, Plaintiffs identify Secretary of the Interior Order 3438, Ex. 2 hereto ("Order 3438"), which directs bureaus and personnel within the Department of the Interior to consider, when conducting review of any "proposed energy project" under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, ("NEPA"), "a reasonable range of alternatives that includes projects with capacity densities meeting or exceeding that of the proposed project." *Id.* at 1. NEPA is a purely procedural statute that "merely prohibits uninformed – rather than unwise – agency action." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989). Order 3438 does not direct any specific outcomes on applications themselves. Order 3438 is purely procedural, and applies to *any* proposed energy project, not just solar or wind projects.

Third, Plaintiffs target the September 18, 2025, memorandum from the Assistant Secretary of the Army for Civil Works, Ex. 3 hereto ("Corps Memo") providing information "for applying the public interest review on certain permit actions" under Clean Water Act Section 404 and Rivers

2

and Harbors Act Section 10 permits "related to energy generation." *Id*. at 1.  This memorandum directs that certain regulatory criteria be considered, *id*. at 3, and that the Corps "prioritize" permit applications "related to projects that would generate the most annual potential energy generation per acre over projects with low potential generation per acre," *id*. at 4.  Like Order 3438, the Corps Memo does not direct outcomes on permit applications, and instead merely provides direction on internal agency process and considerations.

Fourth, Plaintiffs contend there is a "ban" on issuing Bald and Golden Eagle Protection Act incidental take permits, based on a banner that appeared on Interior's Fish and Wildlife Service ("FWS") website.  *See* Am. Compl. ¶ 127; Ex. D, Dkt. 33-4 ("Eagle Banner").  The Banner stated that "ePermits will no longer automatically issue general permits for eagle Incidental Take," but advised that applicants could "still complete a general permit application form" and submit the form via email.  *Id*. at 2.  Regardless, FWS has discontinued the temporary practice described in the banner, and has resumed automatic issuance of general permits while continuing to manually process specific permit applications, including processing all general permit applications that were received during any temporary change in practice.  *See* Decl. of Jerome Ford ¶¶ 15-16, Dkt. 63-1.[1]

Fifth, Plaintiffs contend, based again on a screenshot of a website banner, that solar and wind energy projects face a "ban" from using the Information for Planning and Consultation

---

[1]    As previously indicated, during the temporary pause described in the website banner, project proponents could still submit both specific and general take permit applications for manual processing.  *See* Ford Decl. ¶ 6.  The prior practice (now resumed) was to automatically issue general take permits (subject to potential review and audit), after an applicant certified meeting relevant eligibility and issuance criteria.  *Id*. ¶ 8.  It was this website issuance of a general take permit that was temporarily suspended, as described in the website banner, but has now been restored.  *Id*. ¶¶ 11-15.  Specific take permits have always needed to be manually presented and reviewed.

("IPaC") feature of the FWS website and that this "functionally prevents such developers from (among other things) obtaining Corps nationwide permits for their projects." *See* Am. Compl. ¶ 144; Ex. F, Dkt. 33-6 ("IPaC" Banner"). However, the Banner stated that such requested use of IPaC requires "review" by the Deputy Secretary and the Secretary and instructed applicants to "contact the appropriate FWS Field Office to commence" the review process. *Id*. at 2. Furthermore, use of the IPaC tool is neither required nor guaranteed by any law or regulation. *See* Decl. of Gina Shultz ¶ 9, Dkt. 63-2.

Sixth, Plaintiffs identify the May 1, 2025, memorandum issued by then-Acting Interior Solicitor Gregory Zerzan that withdrew Solicitor's Opinion M-37067 dated April 9, 2021 ("M-Opinion"), which addressed the Secretary's Duties under Outer Continental Shelf Lands Act ("OCSLA") Subsection 8(p)(4), and reinstated Solicitor's M-Opinion 37059 on the same subject matter dated December 14, 2020, Ex. 4 hereto. More specifically, the reinstated M-Opinion clarifies that in evaluating the statutory factors the Secretary must act "to prevent . . . all interference, if the proposed activity would lead to *unreasonable* interference, but not if the proposed activity would lead only to de minimis *or reasonable* interference." M-Opinion 37059 at 15. The Opinion outlines principles to be considered in evaluating the Subsection 8(p)(4) factors, but does not prescribe an outcome for that analysis, let alone apply that statutory provision to any specific project.

## LEGAL STANDARDS

Dismissal is required for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1); *see also id*. (h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Dismissal is also appropriate if a complaint "fail[s] to state a claim upon which relief can be granted[.]" *Id*. at (b)(6). Insofar as there may be overlap in these

4

inquiries, that distinction is not critical. *See Verlus v. Experian Info. Sols., Inc.*, No. 23-CV-11426-DJC, 2025 WL 836588, at *1 (D. Mass. Mar. 17, 2025). And while the Court must take Plaintiffs' factual allegations as true, Plaintiffs bear the burden of establishing (and maintaining) standing "and '[n]either conclusory assertions nor unfounded speculation can supply the necessary heft.'" *Id.* (quoting *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016)). Similarly, legal conclusions drawn from factual allegations or mixed allegations of law and fact need not be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Plaintiffs seek wholesale takeover of the manner and pace with which multiple agencies will address applications for activities relating to wind and solar energy development. Controlling case law demonstrates the jurisdictional defect(s) in such an approach, through an interplay of the doctrines of standing, finality, and ripeness. Plaintiffs lack standing because they fail to demonstrate that the agency documents they identify have caused them any cognizable injury. They have failed to identify and challenge final agency action and therefore have not stated proper claims for relief under the APA. And the premature nature of their claims, filed before any agency has taken any final action, shows that they are unripe.

### I.    Plaintiffs' Allegations Fail to Establish Article III Standing.

"'No principle is more fundamental to the judiciary's proper role'" than to enforce the Article III "limit[ ] [on] federal courts' jurisdiction" to consider certain "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006)). "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability."

5

*Hochendoner*, 823 F.3d at 731.  The alleged injury must be sufficiently concrete and imminent, and while imminence can be "a somewhat elastic concept," the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).[2]  Tying a claim to newly-announced policy is particularly suspect, because "[a]ny prediction how the Executive Branch might eventually implement [a] general statement of policy is no more than conjecture at this time."  *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation modified) (finding jurisdiction lacking to consider a case "riddled with contingencies and speculation that impede judicial review").

Plaintiffs have failed to adequately allege standing here because they seek judicial intervention based entirely on internal agency guidance *before* any of the agency defendants have acted with finality on any permit application.  Courts have repeatedly rejected challenges like Plaintiffs' to agency guidance or internal directives that have not yet been applied to the party bringing suit.  For starters, the challenged agency guidance imposes no obligations on permit applicants (or Plaintiffs, have not sought any permits in their own right), rather "[e]verything is intra-governmental[.]" *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 80 (D.D.C. 2025).  Such a challenge to internal agency guidance is thus all but presumptively unable to satisfy standing requirements, because the alleged injury "rest[s] 'on a highly attenuated chain of possibilities[.]'" *Id*. (quoting *Clapper*, 568 U.S. at 410)).  A plaintiff must do more than claim "that their dealings

---

2    A court may consider evidence outside the pleadings on these questions, because it would "def[y] common sense not to consider the time after the complaint is filed in order to assess how imminent the risk of harm really was." *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 224, 235-36 (D. Mass. 2021).

with [an agency] have changed or will change[.]" *Democratic Nat'l Comm. v. Trump*, No. CV 25-00587 (AHA), 2025 WL 1573181, at \*6 (D.D.C. June 3, 2025); *see also Taal v. Trump*, No. 3:25-CV-335 (ECC/ML), 2025 WL 926207, at \*2 (N.D.N.Y. Mar. 27, 2025) (rejecting challenge to new policy guidance where plaintiffs "have not shown that any portion of [the guidance] has or will be relied on in any action taken against them"). The future implementation of the challenged agency guidance, which merely provides for internal processes without specifically dictating outcomes relating to the processing of applications, is too speculative and highly attenuated to demonstrate Plaintiffs have suffered an injury in fact.

Courts have determined that agency guidance that is even more concrete and does address third party compliance—including formally promulgated rules—is often insufficient to create a basis for *injury in fact* that could provide standing. For example, even detailed guidance on prescription drug pricing could not satisfy the injury-in-fact requirement where plaintiff's industry declarant only "hypothesized" at adverse outcomes that "*could*" result but "provided no evidence about how the company has been (or imminently will be) injured." *AstraZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116, 124 (3d Cir. 2025); *see also Teva Pharms. USA, Inc. v. Kennedy*, No. CV 25-113 (SLS), 2025 WL 3240267, at \*12-13 (D.D.C. Nov. 20, 2025). Similarly, uncertainty regarding "rate stability and contract sanctity" or a "chilling effect" on investment are "all too hypothetical to support standing." *New England Power Generators Ass'n, Inc. v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013) (citation omitted). Indeed, "broad-based market effects stemming from regulatory uncertainty are quintessentially conjectural, and it is difficult to imagine a FERC action that would not confer standing under this theory." *Id.*; *see also Am. Mun. Power, Inc. v. FERC*, 86 F.4th 922, 931 (D.C. Cir. 2023).

7

The guidance and internal directives Plaintiffs have identified in their complaint, Am. Compl. ¶ 8, are purely procedural and on their face are thus insufficient to cause injury that is "actual or imminent, not conjectural or hypothetical" or shows "a material risk of future harm" that is "sufficient imminent and substantial" to provide Plaintiffs with standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435-36 (2021) (citing *Clapper*, 568 U.S. at 414, n. 5). And Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *Id*. at 431. Defendants incorporate their prior explanations from briefing and argument on the preliminary injunction motion about what the agency statements actually do (or do not do). *See* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. 33-37, Dkt. 63. To summarize, the Policy Memo does not create insurmountable bottlenecks, but rather reflects the common-sense notion that virtually any meaningful activity at Interior involving an energy project appropriately may, and often does, involve Secretarial awareness and review. Contrary to Plaintiffs' assertions, the Secretary's statutory authority and discretion to review and issue decisions relating to the use of federal public lands and waters or otherwise permit activities under his authority is not altered by the delegation of such authority to subordinate officials within Interior. Thus, it is not uncommon for the Secretary (or immediately subordinate high-ranking Interior officials) to sign energy project decision documents or to simply review any applications considered by Interior's bureaus at any point in the process. *Id*. (providing examples for two solar projects). Similarly, Order 3438 provides procedural guidance on implementing a procedural statute (NEPA), and is therefore incapable of having any substantive effect that Plaintiffs would attribute to it. For these guidance documents, Plaintiffs cannot show injury that has occurred or is imminent, they cannot show any alleged injury is caused by the challenged guidance, and without meeting these requirements, they cannot show that vacating these guidance documents will redress any alleged injury.

The Corps' Memo similarly addresses information to be considered in reviewing permit applications, but Plaintiffs fail to identify any adverse agency decision, or even delay, that has or could be caused by the Memo.  Any alleged effect of the Eagle Banner no longer exists.  *See* Ford Decl. ¶ 15.  Plaintiff members remain fully capable of obtaining relevant species information for ESA consultation purposes from the appropriate FWS Field Office, subject to the procedures outlined in the Policy Memo, regardless of when they are able to use IPaC, which is merely a facilitative tool.  Shultz Decl. ¶ 9.  Again, it is highly unlikely, if not impossible, for Plaintiffs to satisfy the injury, causation, and redressability requirements for these agency documents or practices.

Finally, even if an M-Opinion could satisfy jurisdictional requirements, the one targeted here surely does not because it only provides legal advice about how future decisions must "prevent[ ] all interference [with other reasonable uses], if the proposed activity would lead to unreasonable interference, but not if the proposed activity would lead only to *de minimis* or reasonable interference."  M-Opinion 37059 at 15.  Again, this guidance does not make a decision on any application, but advises Interior bureaus on considerations in making future decisions.  In sum, the agency documents Plaintiffs identify are incapable of causing a concrete, non-hypothetical injury sufficient to provide standing.

## II.    Plaintiffs Fail to State a Claim for Relief under the APA.

Plaintiffs' Amended Complaint similarly should be dismissed because none of the six challenged guidance documents or practices are final agency actions reviewable under the APA. Rather than alleging that Defendants violated a legal requirement when making a decision on a specific permit or license, Plaintiffs instead challenge these purported agency actions in the abstract, divorced from any concrete decision.  And none of the six alleged actions require anything

of Plaintiffs or their members.  The Amended Complaint does not even allege that Defendants have unlawfully withheld some required action on any specific application.  This case thus stands in stark contrast to a case brought by a project developer challenging an agency decision on an applied-for permit, or to otherwise seek judicial review of a concrete dispute.  Plaintiffs here are trade organizations or advocates for the renewable industry as a whole seeking to counter a purported "barrage of adverse actions . . . with the goal and effect of destroying solar and wind energy."  Am. Compl. ¶ 2.  Plaintiffs seek to shift internal agency processes in a direction that, in Plaintiffs' view, would provide better prospects for the clean energy industry writ large.  APA review, however, exists only for a party to obtain judicial review of an agency's final action.

Plaintiffs identify no "final agency action" subject to APA review.  The APA provides for judicial review of agency action "made reviewable by statute [or] *final agency action* for which there is no other adequate remedy in a court."  5 U.S.C. § 704 (emphasis added); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  "Final agency action" is action that (1) "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) creates "legal rights or obligations," with "direct and appreciable legal consequences."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted).  The action "must not be of a merely tentative or interlocutory nature."  *Id*.  Preliminary steps, "far upstream" of an agency's decision, are not final agency action.  *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024).[3]

---

[3]    While the challenged internal agency guidance documents are not final agency actions, some of Plaintiffs' challenges do not even target agency action.  For example, Plaintiffs fail to explain how a banner temporarily appearing on a website can constitute "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

Here, Plaintiffs launch a broadly framed attack against agency documents and temporary practices, alleging they "are inflicting cascading and irreparable economic and operational harms" and have "stopped the pipeline for new wind and solar projects . . . and have impermissibly undermined existing project authorizations[.]" Am. Compl. ¶ 9.  Such alleged "flaws in the entire 'program' – consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well – cannot be laid before the courts for wholesale correction under the APA[.]" *Lujan*, 497 U.S. at 893.  Reviewing courts should "intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Id*. at 894.  Certain actions must be "reduced to more manageable proportions, and [their] factual components fleshed out, by some concrete action applying [it] to the claimant's situation." *Id.* at 891; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (recognizing the targeted agency action must be "circumscribed" and "discrete").

For similar reasons that the allegations do not establish standing, they fail to satisfy the second prong of the *Bennett* standard because no legal rights or obligations flow from, or are affected by, the guidance documents and website banners. *See supra*, pp. 9-10.  Again, the Policy Memo simply advises that identified agency leadership, who are tasked under relevant statutes with effectuating Congressional direction, will at least review actions relating to wind and solar energy projects.  And Order 3438 clarifies aspects of the environmental review process for *all* energy projects.  These documents do not make decisions with legal consequences, they provide guidance regarding the manner in which future decisions will be made.  The same is true of the Corps' Memo, and M-Opinion 37059.  Finally, the Eagle Banner and IPaC Banner don't even

11

offer guidance – they are temporary, informational updates about how the relevant permits and processes will continue to proceed for wind and solar projects.

Although another Court in this District concluded that plaintiffs could challenge "an indefinite pause" that "'prevent[s] [p]laintiffs from moving forward' with their proposed activities,'" *see New York v. Trump*, No. 25-CV-11221-PBS, 2025 WL 3514301, at *9 (quoting *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 60 (D.D.C. 2019)), Plaintiffs here have pointed to no such agency decision. None of the purported actions identified in the Amended Complaint prevent an applicant from moving forward with an application for review of a wind or solar energy project. *See*, *e.g.*, Shultz Decl. ¶ 9; Decl. of Martin Wargo ¶¶ 3-4, Dkt. 63-5; Decl. of Jayme Lopez Decl. ¶¶ 14-24, Dkt. 63-3. At most, the challenged documents and practices clarify steps that may take place in such ongoing review, all within each agency's broad discretion to employ in processing applications and meeting both statutory and regulatory steps necessary to approve or deny such applications. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524-25 (1978) (agencies have discretion to formulate internal procedures and courts should not "engraft[] their own notions of proper procedures upon agencies entrusted with substantive functions by Congress."). If Plaintiffs could demonstrate that a nondiscretionary deadline has passed for some discrete, legally required action in a specific project, they might be able to seek review of alleged unreasonable delay or unlawfully withheld agency action under the APA, 5 U.S.C. § 706(1). However, their Amended Complaint does not seek any such relief.

As *Lujan* explains, judicial review of final agency action should proceed when the relevant procedures are applied in a new agency decision(s). "The case-by-case approach that this requires is understandably frustrating to [ ] organization[s] such as [Plaintiffs], which [have] as [their] objective across-the-board protection of [the renewable energy industry]. But this is the

traditional, and remains the normal, mode of operation of the courts." 497 U.S. at 894. Plaintiffs' claims attempt to obtain judicial review *before* such final agency action has taken place. Thus, they have not stated a claim for relief under the APA.

### III.    Plaintiffs' Claims Are Not Ripe for Judicial Review

Finally, Plaintiffs' claims are also unripe. In determining whether this challenge "is ripe for review a twofold inquiry must be made: first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 162 (1967).

On the first prong, Plaintiffs' alleged legal injury "rest[s] upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)); *see also Mayor of Ocean City v. U.S. Dep't of the Interior*, No. SAG-24-03111, 2025 WL 3628137, at *4 (D. Md. Dec. 15, 2025) (plaintiff "has pointed to no action that marks the 'consummation' of a decision-making process, and because future uncertainties remain" (citation omitted)). Even if an agency action (such as a formally adopted regulation) meets the "consummation" prong of the finality test, it may not be ripe where such a regulation "serves notice only that" some further action may take place. *Toilet Goods Ass'n*, 387 U.S. at 163. The Supreme Court thus found a facial challenge to the regulation in *Toilet Goods* to be unripe, because "[a]t this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order." *Id*. Courts considering similar facial challenges to regulations or to agency guidance have similarly paired the analysis of standing and ripeness in dismissing actions for lack of jurisdiction. *See, e.g.*, *Teva Pharms.*, 2025 WL 3240267, at *12-13.

13

The same analysis applies here.  For example, it may be that the Bureau of Land Management ("BLM") includes capacity density alternatives and analysis in a future NEPA document assessing one or more of the solar project right of way ("ROW") applications that Plaintiffs mention.  *See, e.g.*, Joint Decl. ¶¶ 242-50, 258-66, 267-74, 275-81, 282-91, 292-300, 301-09, 310-19; Dkt. 37.  But the purported unlawfulness of doing so cannot be determined from the text of Order 3438.  Indeed, BLM may grant the ROW to the satisfaction of the applicant, and judicial review will be unnecessary, unless sought by an opponent to the project.  Similarly, even if the challenged documents and practices "reflect[ ] 'an abstract decision' to revoke [or disapprove] [a] [Construction and Operations Plan] . . . agency consideration remains ongoing, and there remain opportunities for [the Bureau of Ocean Energy Management] to depart from that inferred abstract decision before any decision resulting in the denial of an agency service, such as an approval necessary to continue development, is made." *Ocean City*, 2025 WL 3628137, at *4 (quoting *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025)).  The same analysis applies to the other challenged agency guidance documents identified in the Amended Complaint.  It is their potential or likely use in review of a pending or future application that Plaintiffs fear.  But none of that has occurred.  Mere speculation that an agency may eventually issue a final agency action that Plaintiffs fear will violate the APA does not provide a ripe claim now.

The second prong of the ripeness analysis further militates against relief.  Here, the procedural nature of the challenged documents and practices has particular force.  Plaintiffs are "not required to engage in, or to refrain from, any conduct[.]" *Texas*, 523 U.S. at 301.  Plaintiffs have provided no basis for determining that they will suffer hardship in withholding relief – many of the identified projects have been awaiting the next approval for years, well before any purported

14

unlawful shift in policy. And Plaintiffs can show no hardship from withholding review for the numerous examples where a developer is "not currently proceeding with the next steps in developing the project[.]" *Ocean City*, 2025 WL 3628137, at \*2; *see also*, *e.g.*, Joint Decl. ¶¶ 68, 123, 366 (erroneously claiming a proponent "cannot finalize" a permit application), 374, 381, 388, 394, 401, 408, 415, 422, 429, 436, 443. As in *Texas*, the Court should "find it too speculative whether the problem[s] [Plaintiffs] present[ ] will ever need solving[.]" 523 U.S. at 302. Plaintiffs' abstract claims are not fit for judicial consideration, and they cannot demonstrate hardship in continuing the status quo. For this additional reason, their claims are unripe and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss this case without prejudice.

Respectfully submitted this 16th day of March 2026.

> ADAM R.F. GUSTAFSON
> Principal Deputy Assistant Attorney General
>
> BRADLEY CRAIGMYLE
> Deputy Assistant Attorney General
> United States Department of Justice
> Environment and Natural Resources Division
>
> */s/ Paul A. Turcke*
> PAUL A. TURCKE
> Trial Attorney (Idaho Bar No. 4759)
> Natural Resources Section
> 1290 West Myrtle Street, Suite 500
> Boise, ID 83702
> (202) 532-5994
> paul.turcke@usdoj.gov

15

ROBERT P. WILLIAMS
Senior Trial Attorney (DC Bar No. 474730)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
(202) 305-0210
robert.p.williams@usdoj.gov


REDDING C. CATES
Senior Trial Attorney (Cal. Bar No. 269055)
Environmental Defense Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
(202) 353-5561
redding.cates@usdoj.gov


Attorneys for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March 2026, a true and correct copy of the

foregoing is being served via the Court's CM/ECF system upon all counsel of record.

/s/ *Paul A. Turcke*
Paul A. Turcke

16

17