

**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
CIVIL WORKS
108 ARMY PENTAGON
WASHINGTON DC 20310-0108

SACW

**SEP 1 8 2025**

MEMORANDUM FOR COMMANDING GENERAL, U.S. ARMY CORPS OF ENGINEERS

SUBJECT: Direction on Reviewing Permit Applications Related to Energy Generation Projects

1. References:

   a. Clean Water Act, Section 404, 33 U.S.C. § 1344.

   b. Rivers and Harbors Act of 1899, Section 10, 33 U.S.C. § 403.

2. Purpose: The purpose of this memorandum is to provide direction to the U.S. Army Corps of Engineers (Corps) for applying the public interest review on certain permit actions under the Clean Water Act (CWA), Section 404, and the Rivers and Harbors Act of 1899 (RHA), Section 10, related to energy generation. This direction is needed to alleviate the National Energy Emergency declared in Executive Order 14156, Declaring a National Energy Emergency (Jan. 20, 2025).

3. Background:

   a. The Corps decision on whether to issue a CWA or RHA permit is "based on an evaluation . . . of the proposed activity and its intended use on the public interest." 33 C.F.R. § 320.4(a)(1). In conducting this evaluation, the Corps is required to balance the "benefits which reasonably may be expected to accrue from the proposal . . . against its reasonably foreseeable detriments." *Id.* Among factors the Corps should consider include "economics, aesthetics, general environmental concerns, . . . land use, navigation, . . . energy needs, [and] safety." *Id.* Corps decisions on permit applications for activities related to power generation projects necessarily implicate these factors.

   b. For CWA permit applications, the Corps will deny "a permit . . . if the discharge that would be authorized by such permit would not comply with the Environmental Protection Agency's 404(b)(1) guidelines." 33 C.F.R. § 320.4(a)(1). The Environmental Protection Agency's 404(b)(1) guidelines are codified in regulation at 40 C.F.R. Part 230. The guidelines state that "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem . . ." 40 C.F.R. § 230.10(a). The guidelines further provide that "[a]n alternative is practicable if it is available and capable

SACW
SUBJECT: Direction on Reviewing Permit Applications Related to Energy Generation Projects

of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." 40 C.F.R. § 230.10(a)(2).

c. On January 20, 2025, President Trump signed Executive Order (EO) 14156, titled "Declaring a National Energy Emergency," declaring that the United States is in a national energy emergency. The EO states that the nation's current energy production and generation capacity is inadequate. Due to this energy emergency and the threats that we face, the buildout of energy infrastructure is crucial. Inaction in addressing this emergency and the infrastructure buildout that is required is not an option. In order to support not only the existing electricity demand, but also the imminent growth in demand for electricity, energy infrastructure that is reliable and efficiently uses our nation's finite resources is imperative. Different generation types (e.g., wind, solar, gas, etc.) require different amounts of land (and land parcel sizes) to generate similar amounts of power, and as a result different generation types have widely varying environmental impacts. For instance, according to the U.S. Department of Energy, National Renewable Energy Laboratory (NREL)[1] and the U.S. Energy Information Administration (EIA)[2] the boundary area of a 1,000 MW nameplate onshore wind farm is 85,000 acres compared to 6,000 acres for the same 1,000 MW of nameplate Solar PV generation. EIA data also indicates that advanced nuclear reactors can be developed with over 2,000 MW nameplate capacity using only around 60 acres.

4. Direction:

a. Consistent with our CWA and RHA authorities, I am directing that the Corps' public interest analysis on "energy needs" for individual permit applications for discharges of dredged or fill materials requiring Clean Water Act authorizations or for activities requiring Rivers and Harbors Act Section 10 permission related to energy generation projects consider the project's annual potential energy generation per acre, whether they displace other more reliable energy sources, and whether the activities related to the projects denigrate the beauty of the Nation's natural landscape under the public interest review's "aesthetics" factor.[3]

b. Consistent with the CWA and CWA 404(b)(1) guidelines regulation, I am directing that the Corps' analysis under the 404(b)(1) guidelines consider whether an alternative energy generation source can deliver the same amount of generation while having a "proposed discharge [with] . . . less adverse impact on the aquatic environment." 40 C.F.R. § 230.10(a). To be "practicable" under the guidelines, the alternative energy

---

[1] National Renewable Energy Laboratory, Land-Use Requirements of Modern Wind Power Plants in the United States (Aug. 2009) (converted from hectare to acres)(available at: https://docs.nrel.gov/docs/fy09osti/45834.pdf).
[2] EIA, Capital Cost and Performance Characteristics for Utility-Scale Electric Power Generating Technologies (Jan. 2024)(available at: https://www.eia.gov/analysis/studies/powerplants/capitalcost/pdf/capital_cost_AEO2025.pdf).
[3] Executive Order 14315, Ending Market Distorting Subsidies for Unreliable, Foreign Controlled Energy Sources, Sec. 1 (July 7, 2025).

SACW
SUBJECT:  Direction on Reviewing Permit Applications Related to Energy Generation Projects


generation source must still meet the project's "basic purpose" and "overall project purpose."  40 C.F.R. § 230.10(a)(2).

c. I am further directing the Corps to prioritize processing CWA and RHA permit applications related to projects that would generate the most annual potential energy generation per acre over projects with low potential generation per acre.

5.  The point-of-contact for this memorandum is Mr. Milton Boyd, Acting Director of Policy and Legislation.  He may be contacted at milton.w.boyd.civ@army.mil or (703) 693-3655.

ADAM TELLE

3