# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| RENEW NORTHEAST, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-13961 |

## DEFENDANTS' MOTION FOR RELIEF FROM OR CLARIFICATION OF PRELIMINARY INJUNCTION ORDERS

This case involves a challenge to various agency guidance documents or practices relating to review, approval, and oversight of wind and solar energy projects. Plaintiffs are nine organizations that advocate for and/or perform services related to the wind and solar energy industry. On April 21, 2026, the Court issued a Memorandum and Order, Dkt. 89, granting Plaintiffs' motion for preliminary injunction, as well as an Order, Dkt. 90, addressing the scope of preliminary injunctive relief. The Court preliminarily enjoined Defendants United States Department of the Interior, et al., "from implementing" or "otherwise giving effect" to specified agency actions, as well as from "otherwise taking any action" relating to the topics or procedures described therein. *See* Mem. & Order 71; Order 2-3. The Court applied the preliminary injunction "to all members" of the nine Plaintiff-organizations. But Plaintiffs, in briefing their motion for preliminary relief, did not disclose any membership lists.

1

Defendants hereby move for relief from, or clarification of, these orders.  The requested relief is needed because Defendants are uncertain about the intended scope of the orders, including whether the Court intended to prohibit (or constrain) the Secretary of the Interior – who is charged by Congress with implementing the relevant statutes – from approving energy project applications or reviewing actions taken by his subordinates.  Defendants' deadline to appeal from the April 21 preliminary injunction orders is June 22, so Defendants respectfully request a ruling on this motion not later than June 18.  Counsel have conferred, and Plaintiffs have indicated that they will reserve taking a position pending review of this motion.

Though Defendants disagree with the Court's conclusions in allowing the preliminary injunction, they do not re-litigate matters decided in the Court's ruling on that motion.  Rather, they seek "relief from" the Court to address what may be unintended consequences of the preliminary injunction – a "reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  Any relief under the "catchall" subsection (b)(6) would flow from the Court's "residual reservoir of equitable power to grant discretionary relief[.]" *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 5 (1st Cir. 2001).  "The bar for such relief is set high." *Id*. at 5-6.  Still, analysis under the catchall provision can often "rest on fact-specific considerations informed by the nature and circumstances of the particular case" – "its contours are peculiarly malleable." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83-84 (1st Cir. 2010) (citing *Paul Revere*, 248 F.3d at 5-6).

Alternatively, the Court has inherent authority to clarify or revise an interlocutory order "when it is consonant with equity to do so." *B.P.G. Autoland Jeep-Eagle, Inc. v. Chrysler Credit Corp.*, 799 F. Supp. 1250, 1258 (D. Mass. 1992) (citation modified); *see also Movie Sys., Inc. v. MAD Minneapolis Audio Distribs., a Div. of Smoliak & Sons, Inc.*, 717 F.2d 427, 430 (8th Cir.

1983) ("In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason."). Here, Defendants seek instruction or clarification in interpreting the orders' effect on future actions relating to energy projects.

> There is no Federal Rule of Civil Procedure specifically governing "motions for clarification." The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend. Although such a motion cannot open the door to re-litigating a matter that the court has considered and decided, courts in [the D.C.] Circuit have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation. By clarifying the scope of a previously issued preliminary injunction, a court adds certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous.

*Nat'l Treasury Emps. Union v. Vought*, No. CV 25-0381 (ABJ), 2025 WL 3771192, at *3 (D.D.C. Dec. 30, 2025) (citation modified); *see also New York v. Biden*, No. CV 20-2340 (EGS), 2021 WL 7908124, at *2 (D.D.C. Aug. 23, 2021).[1] Similar considerations often arise in "public law" cases involving "complex legal goals" and necessitate that district courts "be granted considerable latitude in determining the appropriate response to requests for modification or enforcement of the original order." *Williams v. Lesiak*, 822 F.2d 1223, 1226-27 (1st Cir. 1987) (citation omitted).

---

[1]    The D.C. Circuit has discussed the extent to which Supreme Court cases "demarcate" the bounds of permissible relief under Rule 60(b)(6), focusing on the distinction between being unable to pursue issues on appeal versus consciously choosing to forgo an appeal. *See Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1140-41 (D.C. Cir. 1988). Defendants bring the instant motion to inform their choice whether to appeal from the preliminary injunction orders. As such, confirming the scope of the injunction is, in Defendants' view, the foremost priority in this case.

Under either standard, any clarification of an order "would be in the sound discretion of the court," but "courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court[,] . . . and courts no less than parties desire to avoid unwitting contempts as well as to punish deliberate ones." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945); *see also Williams*, 822 F.2d at 1627 ("where the order has proved to be a faulty method for accomplishing the goal for which it was designed, it would be error for a district court to refuse to grant a modification").

Clarification of the scope of injunctive relief is necessary here regarding four of the subject agency documents: (1) the "DOI Review Procedures Memo"; (2) the "DOI Land Order"; (3) the "Corps' Memo"; and (4) the "Zerzan M-Opinion." *See* Order 2-3.[2] The scope of the Court's injunction, in some instances, could be read to broadly prohibit the relevant agency processes or bar any potential action relating to the topics addressed in each document. Defendants request that the Court clarify the intended scope or, if appropriate, grant relief from any scope beyond that which the Court intended, and require Plaintiffs to disclose their membership.

***Any lawful action.*** At the outset, the Court's Memorandum articulating its rationale for the Order concludes by stating that "[n]othing in this Memorandum or the accompanying Order shall prevent Defendants from taking any lawful action that is not based on the challenged

---

[2] The claims address an "Eagle Take Permit Ban" but Plaintiffs withdrew their request for an injunction relating to that claim because Defendant U.S. Fish and Wildlife Service resumed automatic issuance of certain take permits for eagle species. *See* Mem. & Order, 2 n.1. The orders also enjoin implementation of any "ban" (as evidenced by a website banner) on use by wind and solar energy project proponents of the Service's Information for Planning and Consultation ("IPaC") website. *See* Order 2-3. The subject website banner has been removed. *See* U.S. Fish & Wildlife Service, Information for Planning and Consulting, https://ipac.ecosphere.fws.gov/ (last visited May 19, 2026). Thus, Defendants do not seek relief from, or clarification regarding, these actions or the provisions of the orders relating to them.

Agency Actions as described herein and in the accompanying Order." Mem. & Order 73. This language does not appear in the Order. Thus, Defendants could face accusations of noncompliance with the Order and its "or otherwise take any steps" or "action" clauses, despite reaching a lawful outcome that is independent from and uninfluenced by any of the challenged documents. Defendants therefore first request the Court clarify the Order to include the same non-prohibition of "lawful action that is not based on the challenged Agency Actions" as appears in the Memorandum.

*DOI Review Procedures Memo.* The DOI Review Procedures Memo identified "decisions, actions, consultations, and other undertakings" related to wind and solar energy projects that require submission to the Interior Offices of the Executive Secretariat, Deputy Secretary, and Secretary. Mem. & Order 17. The Court's Order enjoins Defendants "from implementing the DOI Review Procedures Memo or otherwise taking any steps to require agency action related to wind and solar energy facilities" to be submitted to, and reviewed by, the identified Interior Offices. Order 2. Under a reasonable reading, the Order prohibits the Interior Secretary's Office from being involved in the decision-making process for certain actions related to the wind and solar energy project-related applications of Plaintiff-organization members. But the Secretary (or Deputy Secretary) is the official that Congress has directed to take actions under most Interior-related statutes and, therefore, the Secretary can and often does review, and not infrequently signs, decisions relating to energy projects.[3] Subordinates to the Secretary may take action under those statutes, only insofar as the Secretary has delegated his authority to them to act, as provided in the Department of the Interior's Departmental Manual.

---

[3]     *See*, *e.g.*, Outer Continental Shelf Lands Act Section 5, which provides, "[t]he Secretary shall administer the provisions of this subchapter relating to the leasing of the outer Continental Shelf." 43 U.S.C. § 1334(a).

So, the orders, specifically the "otherwise taking any steps" language, seemingly prevent the Secretary from discharging his statutory duties and from performing core oversight functions of his job, regardless of the outcome of that oversight or the potential harm (or benefit) to Plaintiffs' membership.

Any difficulty interpreting the scope of injunctive relief is compounded by the task of limiting implementation of the orders to the Plaintiff organizations, or, where applicable, their members. Having clarity as to which potential applicants the injunction applies is essential to preserve the distinction between permissible "complete relief" between the parties and impermissible "universal relief" beyond the parties. *See* Mem. & Order 71; *see also Trump v. CASA, Inc.*, 606 U.S. 831, 862 (2025) (Thomas, J., concurring) ("In no circumstance can a court award relief beyond that necessary to redress the plaintiffs' injuries."). But Plaintiffs in the preliminary injunction briefing did not identify their members, or even allege that all of the projects mentioned in the preliminary injunction briefing involve a Plaintiff member(s). And before filing this Motion, counsel contacted Plaintiffs' counsel, raised this concern, and asked for identification of Plaintiff-organization members, or at least members with pending wind and solar project applications. Plaintiffs' counsel has not yet provided any membership information in response to those requests. The upshot is that, in order to avoid unknowingly acting contrary to the injunction, Defendants would be required to refrain from conduct relating to any wind or solar project.

***DOI Land Order and the Corps' Memo.*** This DOI Land Order addresses consideration, or prioritization, of projects based on "capacity density." Given that the DOI Land Order addresses the range of alternatives to be considered in environmental review rather than a substantive outcome, the Order constrains Interior's identification of alternatives before an

agency has even started the decision-making process for any project.  In addition to prohibiting

reliance on the DOI Land Order, the Court's Order enjoins Defendants from "otherwise taking

any action to limit permitting of *energy* projects based on a project's comparative 'capacity

density[.]'"  Mem. & Order 31 (emphasis added).  This "otherwise taking any action" language

exceeds the limited scope of Plaintiffs' APA challenge to the DOI Land Order, creates

uncertainties about when and to what extent the injunction applies, and goes far beyond

affording complete relief between the parties.  The Court should tailor its relief to the challenged

document to give the parties a clear understanding of the relief provided.  A similar concern

exists regarding the Corps' Memo.  A member of a Plaintiff organization might interpret the

phrase "or otherwise taking any action" more broadly than the Court intended and challenge an

alleged prioritization that has no connection to § 4(c) of the Corps' Memo – e.g., simply issuing

one permit before another for unrelated, lawful reasons.  *Id*.

    ***Zerzan M-Opinion***.  Finally, the injunction regarding the Interior Solicitor's M-Opinion

presents similar, even more concrete, concerns.[4]  The Court interpreted the Zerzan M-Opinion

(37086) to withdraw the Anderson M-Opinion (37067) and reinstate the Jorjani M-Opinion

(37059), which provided guidance that offshore wind projects should be disallowed for having

"more than a '*de minimis* or unreasonable interference'" with other enumerated offshore uses.

Mem. & Order 32-33 (quoting M-Opinion 37059).  The Court found that an M-Opinion is

"authoritative" and "binding" on Interior.  *Id*. at 62-65.  Yet the Court enjoined Defendants

"from implementing the Zerzan M-Opinion (M-Opinion 37086) or otherwise taking any action to

---

[4]    For context, there are three M-Opinions mentioned in the Order.  The "Zerzan M-Opinion (M-Opinion 37086)" was issued in the current administration and, in part, had the effect of reinstating M-Opinion 37059, which was issued during President Trump's first term in office.  M-Opinion 37067 was issued by then-Solicitor Robert Anderson while President Biden was in office.  *See* Order 3.

treat M-Opinion 37059 as binding and authoritative or to re-evaluate agency action taken in reliance upon M-Opinion 37067." Order 3.  Thus, the Order, as written, effectively compels upon Interior – in the form of preliminary relief and prior to any action on a given application – a specific statutory interpretation.  The Order, as written, also expands far beyond preliminarily enjoining Interior from relying upon the Zerzan M-Opinion, including by limiting Interior's ability to exercise its inherent discretion to reconsider prior actions.  *See Bost. Redevelopment Auth. v. Nat'l Park Serv.*, 125 F.Supp.3d 325, 335 (D. Mass. 2015).  Indeed, Interior has sought remands in several cases challenging prior offshore wind approvals that had, in part, relied upon M-Opinion 37067.  And one Court has *granted* that request for remand and reconsideration. *Town & Cnty. of Nantucket v. Burgum*, No. 25-cv-906, 2025 WL 3120419 (D.D.C. Nov. 4, 2025).  Implementation of that remand order is complicated (if not prohibited) by this Court's Order.  It seems unlikely the Court intended its injunction to reach so broadly into agency authority and other judicial proceedings.[5]

In order to reduce confusion related to these considerations and enhance Defendants' ability to implement the orders, Defendants request that Plaintiffs be required to provide Defendants with a list(s) of their members, prioritizing any members who currently have pending applications for wind or solar energy projects.  Additionally, Defendants request that the orders be limited to enjoining Defendants from implementing the four identified agency documents, and striking the "or otherwise taking any steps" and "otherwise taking any action" provisions of the Order for each of the four documents discussed above.  Finally, Defendants request that

---

[5]    Interior would presumably be obligated to consider any M-Opinions that reflect the "best" reading of a relevant statute(s).  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412-13 (2024).

clarifying language be added to the Memorandum and the Order, stating, for example, that

"nothing in the Court's orders or scope of injunctive relief prevents an agency from conducting

any process or reaching any outcome relating to any energy project, notwithstanding the

similarity of the process or outcome to that which might be suggested in the enjoined Agency

Actions, when the process or outcome can be independently justified under other applicable law

or procedures taken in accordance with law." *See* Mem. & Order 73.

Respectfully submitted this 20th day of May 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Paul A. Turcke*
PAUL A. TURCKE
Trial Attorney (Idaho Bar No. 4759)
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
(202) 532-5994
paul.turcke@usdoj.gov

ROBERT P. WILLIAMS
Senior Trial Attorney (DC Bar No. 474730)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
(202) 305-0210
robert.p.williams@usdoj.gov

REDDING C. CATES
Senior Trial Attorney (Cal. Bar No. 269055)
Environmental Defense Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
(202) 353-5561
redding.cates@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May 2026, a true and correct copy of the

foregoing is being served via the Court's CM/ECF system upon all counsel of record.

/s/ Paul A. Turcke
Paul A. Turcke

10