UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Renew Northeast, et al.,<br><br>　　　　Plaintiffs<br><br>　　v.<br><br>United States Department of Interior, et al.,<br><br>　　　　Defendants. | No. 25-cv-13961-DJC |

**MEMORANDUM AND ORDER**

CASPER, C. J.                                                                                    June 16, 2026

## I.    Introduction

Having considered the motion to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) filed by Defendants United States Department of the Interior ("DOI"), Douglas Burgum, DOI Secretary, in his official capacity ("DOI Secretary Burgum"), Bureau of Land Management ("BLM"), Steve Pearce, Director of BLM, in his official capacity, Bureau of Ocean Energy Management ("BOEM"), Matthew Giacona, Acting Director of BOEM, in his official capacity, Bureau of Safety and Environmental Enforcement ("BSEE"), Kenneth Stevens, Principal Deputy Director of BSEE, in his official capacity, United States Fish and Wildlife Service ("USFWS"), Brian Nesvik, Director of USFWS, in his official capacity, United States Army Corps of Engineers (the "Corps") and William H. Graham, Jr., Chief of Engineers and Commanding General, in his official capacity (collectively, "Defendants"), D. 85-86, and the opposition filed by Plaintiffs RENEW Northeast, the Green Energy Consumers Alliance, Inc. ("GECA"), Mid-Atlantic

1

Renewable Energy Coalition Action, Alliance for Clean Energy – New York, Renewable Northwest, Southern Renewable Energy Association, Interwest Energy Alliance, Clean Grid Alliance and the Carolinas Clean Energy Business Association (collectively, "Plaintiffs"; collectively except GECA, "Regional Organization Plaintiffs"), D. 87, the Court DENIES the motion in part and ALLOWS same in part.

## II.    Background

In this action, Plaintiffs challenge six agency actions (collectively, "Agency Actions") alleging that the Agency Actions violate the Administrative Procedure Act, 5 U.S.C. §§ 500-596, 701-706 (the "APA").  D. 1; D. 33.  Specifically, Plaintiffs challenge:  (1) DOI's July 15, 2025 memorandum entitled Departmental Review Procedures for Decisions, Actions, Consultations, and Other Undertakings Related to Wind and Solar Energy Facilities ("DOI Review Procedures Memo") which established a review procedure for all DOI agency actions related to wind and solar energy facilities, DOI Review Procedures Memo at 1, D. 35-2; (2) USFWS's July 2025 announcement that solar and wind projects cannot use the IPaC website prior to undergoing the review procedures outlined in the DOI Review Procedures Memo ("Wind and Solar IPaC Ban"), D. 33-6 at 2; D. 35-7; (3) Section 4 of DOI Secretary Burgum's August 1, 2025 Secretarial Order No. 3438 entitled Managing Federal Energy Resources and Protecting the Environment ("DOI Land Order") which restricts DOI's ability to approve energy projects based on a project's "capacity density," DOI Land Order § 4, D. 35-3; (4) Section 4(c) of the Corps' September 18, 2025 memorandum entitled Direction on Reviewing Permit Applications Related to Energy Generation Projects ("Corps' Memo") requiring the Corps to "prioritize processing CWA and RHA permit applications" for projects with higher capacity densities, Corps' Memo § 4(c), D. 35-4; (5) then-Acting DOI Solicitor, Gregory Zerzan's May 1, 2025 M-Opinion 37086 entitled Withdrawal of

Solicitor's Opinion M-37067 and Reinstatement of M-Opinion 37059, Secretary's Duty to Prevent Interference with Reasonable Uses of Exclusive Economic Zone, the High Seas, and the Territorial Seas in Accordance with Outer Continental Shelf Lands Act Subsection 8(p), Alternate Energy-related Uses on the Outer Continental Shelf ("Zerzan M-Opinion"), D. 35-8, which withdraws the prior administration's Anderson M-Opinion interpretation of § 8(p)(4) of OCSLA and reinstates the first Trump Administration's Jorjani M-Opinion interpretation of same, requiring all DOI bureaus and offices to "treat [the Jorjani M-Opinion] as binding and authoritative" and mandating that DOI "re-evaluate[]" all "Departmental action taken in reliance on" the withdrawn Anderson M-Opinion, Zerzan M-Opinion at 3; and (6) USFWS's January 2025 announcement that USFWS was "temporarily ceasing issuance" of eagle incidental take permits to wind energy facilities under BGEPA "until further notice," and "will no longer automatically issue general permits" (the "Eagle Take Permit Ban"), D. 33-4 at 2.

### III.    Procedural History

Plaintiffs filed this action on December 23, 2025, D. 1, and filed the operative amended complaint on January 12, 2026, D. 33.  The same day, Plaintiffs moved to enjoin preliminarily and stay five of the six Agency Actions.  D. 35; D. 89 at 2 n.1.  On March 16, 2026, Defendants filed the present motion to dismiss the complaint in its entirety.  D. 85.  On April 21, 2026, while Defendants' motion to dismiss was pending, the Court granted Plaintiffs' preliminary injunction motion, enjoining the enforcement of the DOI Review Procedures Memo, the Wind and Solar IPaC Ban, the DOI Land Order, the Corps' Memo and the Zerzan M-Opinion.  D. 89; D. 90.  In its preliminary injunction ruling, the Court reviewed Plaintiffs' challenges to these five agency actions under a likelihood of success on the merits standard, which "is higher than the plausibility standard for a claim to survive a Rule 12(b)(6) [or a Rule 12(b)(1)] motion to dismiss."  Hasan v. Educ.

Comm'n for Foreign Med. Graduates, No. 24-cv-10438-DJC, 2024 WL 5008882, at *3 (D. Mass. Dec. 6, 2024) (citing Ayoub v. CitiMortgage, Inc., No. 15-cv-13218-ADB, 2018 WL 1318919, at *8 (D. Mass. Mar. 14, 2018)).  Under this higher standard, the Court concluded, among other things, that Plaintiffs' challenges to these five agency actions were justiciable, reviewable under the APA and likely to succeed on the merits.  D. 89 at 14-73.

IV.    **Discussion**

A.    <u>**As to Rule 12(b)(1) Challenge**</u>

When confronted with a Rule 12(b)(1) motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  The Court may widen its gaze, however, and look beyond the pleadings to determine subject matter jurisdiction.  Martínez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside the pleadings" to decide a Rule 12(b)(1) motion).  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy, 45 F.3d at 522 (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  Standing is a jurisdictional issue, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1), see Kolancian v. Snowden, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

Defendants move to dismiss Plaintiffs' claims on the ground that they have not plausibly alleged standing or ripeness.  D. 86 at 10-13, 17-19.  "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"  TransUnion LLC v. Ramirez, 594 U.S. 413, 423

4

(2021). "Such a case or controversy exists only when the plaintiff demonstrates such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." Gustavsen v. Alcon Lab'ys., Inc., 903 F.3d 1, 6-7 (1st Cir. 2018) (citations and internal quotation marks omitted). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing." TransUnion, 594 U.S. at 423 (citation and internal quotation marks omitted). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Organizational plaintiffs may demonstrate standing by: (1) showing associational standing; or (2) by showing that the organizational plaintiffs have standing to sue on their own. See Equal Means Equal v. Dep't of Educ., 450 F. Supp. 3d 1, 5-6 (D. Mass. 2020). In either instance, the organization must demonstrate more than a "mere interest in a problem." Sierra Club v. Morton, 405 U.S. 727, 739 (1972) (internal quotations omitted). As such, they must make the same showing as is required in the case of an individual: injury, causation and redressability. Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982) (explaining that the court "conduct[s] the same inquiry as in the case of an individual" to assess organizational standing). Plaintiffs must also establish that their challenges are ripe for judicial review. "[T]he question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (internal citation and quotation marks omitted).

As to the DOI Review Procedures Memo, the Wind and Solar IPaC Ban, the DOI Land Order, the Corps' Memo and the Zerzan M-Opinion, Defendants incorporate and advance the same justiciability arguments raised in their opposition to Plaintiffs' preliminary injunction motion, D. 86 at 12-13; see D. 63 at 27-41, 49-53, which the Court rejected in its preliminary injunction ruling, D. 89 at 14-34. As the Court explained fully in that ruling and incorporates by reference into this decision, id., Plaintiffs' challenges to these agency actions are justiciable, id. As to each of these actions, the Regional Organization Plaintiffs have plausibly alleged associational standing based upon direct harm to their members to challenge each of the Agency Actions. Id.; see United States v. AVX Corp., 962 F.2d 108, 116 (1st Cir. 1992) (explaining requirements of associational standing). Specifically, as to the disputed element of standing, see D. 86 at 16, Plaintiffs have plausibly alleged, and submitted declarations to support the allegations that, the Regional Organization Plaintiffs' members face imminent injury from these agency actions, that their injury is traceable to these actions and that their requested relief, vacatur, would redress the harm, D. 89 at 14-34; see generally Regional Organization Plaintiffs' Executive Directors Joint Decl., D. 37; Regional Organization Plaintiffs' Executive Directors Supp. Joint Decl., D. 77-1. Likewise, GECA has plausibly alleged organizational standing to sue on behalf of its own interests "separate and apart from the interests of their members," Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 44 n.7 (1st Cir. 2012); see Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304, 324 (D. Mass. 2013) (explaining requirements of organizational standing), by plausibly alleging, and submitting declarations to support the allegations that, GECA faces imminent injury from these agency actions, that its injury is traceable to the actions and that its requested relief would redress the harm, D. 89 at 14-34; see generally Chretien Decl., D. 38; Chretien Supp. Decl., D. 77-2. Plaintiffs' challenges

6

to these actions are also ripe for the reasons explained in the Court's preliminary injunction ruling. D. 89 at 14-34.

As to the Eagle Take Ban, which the Court did not consider at the preliminary injunction stage, see D. 77 at 7 n.1 (noting that "Plaintiffs no longer seek a preliminary injunction against the enforcement of the [Eagle Take] Ban" "[i]n light of the reinstatement of [the USFWS's] prior policy"); D. 89 at 2 n.1, Defendants also move to dismiss this claim on the ground that it is not justiciable.  D. 86 at 13, 17-19.  Specifically, Defendants argue that "[a]ny alleged effect of the Eagle Banner no longer exists" because the Eagle Take Ban has been removed, id. at 13, and that the claim is not ripe, id. at 17-19; see id. at 7.  In support of this argument, Defendants submit a declaration from the Assistant Director of the Office of Migratory Bird Management, Jerome Ford ("Ford") averring that after Plaintiffs filed their initial complaint, D. 1, USFWS reversed the Eagle Take Ban and has re-commenced issuing permits.  Ford Decl., D. 63-1 ¶¶ 12-16.  Plaintiffs concede that Defendants have withdrawn the Eagle Take Permit Ban, D. 87 at 9 n.3; see D. 33 ¶ 128, but argue that their challenge to the Ban should still go forward as "Defendants have not moved to dismiss this challenge on mootness grounds," nor met their burden of establishing mootness.  D. 87 at 9 n.3.

"The First Circuit has observed that it is appropriate to consider mootness challenges as challenges to a court's subject-matter jurisdiction, and that '[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1).'"  Trafford v. City of Westbrook, 669 F. Supp. 2d 133, 140 (D. Me. 2009) (alteration in original) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001)).  Mootness has a close relationship with standing, "given [the Supreme Court's] repeated statements that the doctrine of mootness can be described as the doctrine of standing set in a time frame:  The requisite personal interest that must

exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Steir v. Girl Scouts of the USA, 383 F.3d 7, 15 (1st Cir. 2004) (alteration in original) (quoting Becker v. Fed. Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000)) (internal quotation marks omitted). This requirement also stems from Article III of the United States Constitution, which requires "[f]ederal judges to decide only *live* controversies that will have a real effect on real parties in interest." Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021) (emphasis in original) (citations omitted). As part and parcel of this requirement, if the requisite personal interest is at any point extinguished during the proceedings, "the mootness doctrine generally stops [the federal judiciary] from pumping new life into the dispute (regardless of how fascinating the party's claims are by 'oust[ing]' the federal court courts of 'jurisdiction' and 'requir[ing]' us to 'dismiss[ ]' the case." Id. (citing cases) (second, third, and fourth alterations in original).

Ultimately, "the key question 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).'" Id. (quoting Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396). "If the answer is no, 'then the court is not really deciding a "case," and (if a federal court) it is therefore exceeding the power conferred on it by . . . the Constitution.'" Id. (quoting Air Line Pilots Ass'n, Int'l, 897 F.2d at 1396). Accordingly, even assuming *arguendo* that a defendant did not move to dismiss on mootness grounds, as Plaintiffs contend here, "[s]ince 'mootness is an issue of subject matter jurisdiction,' it [i]s [also] appropriate for the court to raise the issue *sua sponte*." Soto v. City of Cambridge, 193 F. Supp. 3d 61, 69 (D. Mass. 2016) (internal citation omitted); see, e.g., LaMarche v. Mayorkas, No. 23-cv-30029-MGM, 2024 WL 2502929, at *3 (D. Mass. May 22, 2024) (analyzing mootnees *sua sponte* under a Rule 12(b)(1) standard). "Mootness is a ground which should ordinarily be decided in advance of any determination on the merits.

Further, [courts] are obligated to follow the doctrine of constitutional avoidance, under which federal courts are not to reach constitutional issues where alternative grounds for resolution are available." Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops ("ACLUM"), 705 F.3d 44, 52 (1st Cir. 2013) (internal citation omitted).

Here, Plaintiffs' claim against the Eagle Take Ban is moot. Plaintiffs seek vacatur of the Eagle Take Ban or, alternatively, injunctive relief, D. 33 at Prayer for Relief ¶¶ 2-3, but a "reason for mootness is that a court cannot provide meaningful relief to the allegedly aggrieved party." ACLUM, 705 F.3d at 53. As Defendants have withdrawn the Eagle Take Ban, "there is no ongoing conduct to enjoin." Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016). Likewise, Plaintiffs' request for declaratory relief as to the Eagle Take Ban is also moot. Generally, "issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory." ACLUM, 705 F.3d at 53 (citing cases). Such a claim withstands a mootness challenge only if "there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lewis, 813 F.3d at 59 (quoting ACLUM, 705 F.3d at 54) (internal quotation marks omitted). There is no indication from the record that such immediacy or reality exists here. According to the declaration of the Assistant Director of the Office of Migratory Bird Management, Jerome Ford ("Ford"), the Eagle Take Ban was announced on January 24, 2025 in response to a January 20, 2025 order from DOI Secretary Burgum (the "Wind Order"), which the government purports directed such action, Ford Decl., D. 63-1 ¶¶ 4-5, and was removed on January 7, 2026 "[t]o comply with" a ruling from another session of this Court vacating the Wind Order, id. ¶¶ 10-11; see New York v. Trump, 811 F. Supp. 3d 215, 245 (D. Mass. 2025) (vacating the Wind Order in its entirety). Ford avers that USFWS has since re-enabled automatic issuance of general Eagle Act permits and has issued dozens of permits as of January 2026. Id. ¶¶ 12-16.

Plaintiffs do not point to anything in the record to suggest that the Ban will be revived—let alone with the sufficient immediacy and reality to overcome mootness. Cf. Nat'l Coal. Against Violent Athletes v. Dep't of Educ., No. 17-cv-12043-PBS, 2020 WL 13876913, at *5 (D. Mass. Dec. 3, 2020) (concluding that challenge to guidance document that was subsequently rescinded was not moot where agency "implicitly acknowledged that [the guidance] may remain applicable to" certain actions). Plaintiffs' additional request for "all other relief as the court may deem just and proper, including, but not limited to, attorney's fees and costs," D. 33 at Prayer for Relief ¶ 4, does not rescue their claim against the Eagle Take Ban. "[I]t is well established that an 'interest in attorneys' fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" Harris v. Univ. of Massachusetts Lowell, 43 F.4th 187, 193 (1st Cir. 2022) (quoting Davidson v. Howe, 749 F.3d 21, 27 n.7 (1st Cir. 2014)). "The same is true of [a] claim for costs." Id. Finally, the First Circuit has made clear that a "request for 'any other relief [the] Court deems proper' cannot operate to save [an] otherwise moot action." Id.

To the extent Plaintiffs suggest that their challenge to the Eagle Take Ban is not moot because the Ban can be reinstated at any time, see D. 87 at 9 n.3, this argument is unavailing. The First Circuit has been clear: "It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant - the prospect of harm must have an 'immediacy and reality.'" Steir, 383 F.3d at 16 (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)); see Boston's Child. First v. Bos. Sch. Comm., 260 F. Supp. 2d 318, 333 (D. Mass. 2003) (noting that "[m]ere skepticism . . . about the defendants' future intentions, cannot justify the type of judicial intervention that plaintiffs seek" where challenged policy has been eliminated), aff'd sub nom. Anderson ex rel. Dowd v. City of Bos., 375 F.3d 71 (1st Cir. 2004). The First Circuit, and other courts in this district, have routinely found claims lacking the requisite

immediacy and reality moot.    See, e.g., Lewis, 813 F.3d at 59 (concluding that controversy surrounding a bridge toll collection scheme is "neither immediate nor real" where the state legislature subsequently repealed tolls); Soto, 193 F. Supp. 3d at 69 (concluding that "[i]n light of the fact that the relevant City Ordinance has been repealed, there is no basis for this court to issue either the injunctive or declaratory relief being sought by the plaintiff relating to the meaning of the repealed Ordinance"); Nat'l Coal. Against Violent Athletes, 2020 WL 13876913, at *5 (noting that [c]hallenges to government regulatory schemes which have expired or been effectively repealed are generally moot").  In short, "it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status."  New England Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002).

Likewise, to the extent Plaintiffs contend that Defendants voluntarily removed the Ban to avoid the present lawsuit and that the "voluntary-cessation exception" to mootness thus applies, as they suggested at the preliminary injunction stage, D. 77 at 7 n.1, this argument is not supported by the present record.  The voluntary-cessation exception applies "when a 'defendant voluntar[ily] ceases the challenged practice' in order to moot the plaintiff's case, . . . and there exists 'a reasonable expectation that the challenged conduct will be repeated following the dismissal of the case.'" Lewis, 813 F.3d at 59 (alteration in original) (quoting ACLUM, 705 F.3d at 54, 56).  The applicability of this exception is "highly sensitive to the facts of a given case," ACLUM, 705 F.3d at 56 (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 96-97 (2013)).  As the First Circuit has explained, "the exception ordinarily does not apply where the voluntary cessation occurred for reasons unrelated to the [instant] litigation."  Lewis, 813 F.3d at 59 (citing ACLUM, 705 F.3d at 55).  Here, as noted above, the record establishes that Defendants removed the Eagle Take Ban "[t]o comply with" the New York ruling, Ford Decl., D. 63-1 ¶¶ 11-12, and no other evidence in the

11

present record, including the timing of the Ban's removal in relation to Plaintiffs' preliminary injunction motion, see D. 77 at 7 n.1, is sufficient "basis upon which to conclude that [Defendants] repealed the [Ban] in order to make the present litigation moot," Lewis, 813 F.3d at 59.  The voluntary-cessation exception, thus, does not apply.

Accordingly, the Court concludes that Plaintiffs' claim against the Eagle Take Ban is moot. This claim, therefore, is dismissed on mootness grounds under Rule 12(b)(1).

### B.       As to Rule 12(b)(6) Challenge

Under Rule 12(b)(6), a defendant may move to dismiss an action arguing that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  To decide a Rule 12(b)(6) motion to dismiss, the Court must, reading the complaint "as a whole," conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal allegations are not entitled credit.  Id.  Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."  Schatz, 669 F.3d at 55.  If they do not, then dismissal is warranted.  See Ocasio-Hernandez, 640 F.3d at 12.

Plaintiffs challenge the Agency Actions under the APA.  D. 33 ¶¶ 188-313.  Defendants move to dismiss on the ground that Plaintiffs have failed to plausibly allege that the agency actions are final agency actions under the APA.  D. 86 at 13-17.  The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  An

agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." Id. § 551(13); see id. § 701(b)(2). To be "final," agency action must (1) mark the consummation of the agency's decision-making process and (2) be one by which rights or obligations have been determined or from which legal consequences will flow. Harper v. Werfel, 118 F.4th 100, 116 (1st Cir. 2024) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)).

Defendants again raise substantially similar finality arguments as to Plaintiffs' remaining challenges (i.e., Plaintiffs' claims against the DOI Review Procedures Memo, the Wind and Solar IPaC Ban, the DOI Land Order, the Corps' Memo and the Zerzan M-Opinion) as those advanced in their opposition to Plaintiffs' preliminary injunction motion, D. 63 at 41-49, which the Court rejected in its preliminary injunction ruling, D. 89 at 34-65. As explained fully in the Court's preliminary injunction ruling, which the Court incorporates here, id., these arguments are unpersuasive. Moreover, as noted above, the Court has concluded that Plaintiffs have demonstrated a likelihood of success on the merits of these claims, id., establishing that these claims satisfy a standard higher than that needed to state a claim at the motion to dismiss stage, Hasan, 2024 WL 5008882, at *3. Accordingly, Defendants' arguments that Plaintiffs have failed to state a claim as to their challenges against the remaining agency actions on finality grounds, D. 86 at 13-17, are unavailing. Consistent with the Court's conclusion in its preliminary injunction ruling, Plaintiffs have plausibly alleged that the DOI Review Procedures Memo, the Wind and Solar IPaC Ban, the DOI Land Order, the Corps' Memo and the Zerzan M-Opinion are final agency actions that are subject to APA review. D. 89 at 34-65.

## V.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss in part as to Plaintiffs' challenges to the DOI Review Procedures Memo, the Wind and Solar IPaC Ban, the DOI Land Order, the Corps' Memo and the Zerzan M-Opinion and ALLOWS same in part as to Plaintiffs' challenge to the Eagle Take Ban.  D. 85.


**So Ordered.**

/s Denise J. Casper
Chief United States District Judge